# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WENDY STEADMAN,

                Plaintiff,

      v.                                 Case No. 20-CV-190

ANDREW M. SAUL,
**Commissioner of the Social Security Administration,**

                Defendant.

## DECISION AND ORDER

### 1. Introduction

Alleging she has been disabled since September 1, 2015 (Tr. 16, 35), Wendy Steadman seeks disability insurance benefits. She remained insured through December 31, 2020. (ECF No. 14.) After her application was denied initially (Tr. 106-09) and upon reconsideration (Tr. 111-15), a hearing was held before an administrative law judge (ALJ) on December 12, 2018 (Tr. 30-82). On March 25, 2019, the ALJ issued a written decision concluding that Steadman was not disabled. (Tr. 11-29.) After the Appeals Council denied Steadman's request for review on December 23, 2019 (Tr. 1-6), she filed this action. All

parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 8), and

this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential

evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ determines whether the

claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ

found that Steadman had not engaged in substantial gainful activity since September 1,

2015, her alleged onset date. (Tr. 16.)

The analysis then proceeds to the second step, which is a consideration of whether

the claimant has a medically determinable impairment or combination of impairments

that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it

significantly limits a claimant's physical or mental ability to do basic work activities. 20

C.F.R. § 404.1522(a). The ALJ concluded that Steadman has the following severe

impairments: "lumbar spine dysfunction with radiculopathy post fusion surgery and

cervical spine dysfunction with radiculopathy post fusion surgery." (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or

combination of impairments is of a severity to meet or medically equal the criteria of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or

medically equals the criteria of a listing and also meets the twelve-month durational

2

requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Steadman "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Steadman has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she can only occasionally push or pull with bilateral upper extremities. The claimant must never climb ladders, ropes or scaffolds. She can frequently balance. The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs. She can frequently reach in all directions with her right upper extremity. She can occasionally reach in all directions with her left upper extremity. The claimant can frequently handle or finger with her bilateral upper extremities. She should avoid more than occasional exposure to excessive vibration or workplace hazards including moving machinery and unprotected heights. The claimant is limited to jobs with no fast-paced production rate.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Steadman was unable to perform her past relevant work. (Tr. 22.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including "order clerk" (DOT Number 209.567-014), "compact assembly" (DOT number 739.687-066) and "inspection" (DOT Number 669.687-014). (Tr. 22-23.) Therefore, Steadman was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the

Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Symptom Severity

"In determining whether an individual is disabled, [the ALJ must] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p. The ALJ must assess the individual's symptoms—*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)"—using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p.

In addition to considering all other relevant evidence, the ALJ must also consider the following factors in his assessment to the extent they are relevant:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Although the court is not assessing the claimant's character or truthfulness, SSR 16-3p, this evaluation was previously characterized as a "credibility" assessment, *see* SSR 96-7p, and that language persists in the caselaw. *See, e.g., Hinds v. Saul*, 799 F. App'x 396, 400 (7th Cir. 2020); *Brian J. v. Saul*,

438 F. Supp. 3d 903, 908 (N.D. Ill. 2020). The ALJ's conclusion is entitled to "special

deference," and the court may disrupt it only if that assessment was "patently wrong."

*Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523,

528 (7th Cir. 2017).

> The ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 19.) The ALJ's use of this boilerplate is not problematic provided the ALJ actually

explains the reasons for his conclusion. *See Taylor v. Saul*, No. 19-CV-359, 2020 U.S. Dist.

LEXIS 70731, at *7 (E.D. Wis. Apr. 22, 2020). This requires that the ALJ not merely recite

the evidence but connect the evidence to his conclusions. *Taylor v. Saul*, No. 19-CV-359,

2020 U.S. Dist. LEXIS 70731, at *7 (E.D. Wis. Apr. 22, 2020) (citing SSR 16-3p; quoting *Krevs*

*v. Saul*, No. 18-CV-1742, 2020 U.S. Dist. LEXIS 1236, 2020 WL 58068, at *2 (E.D. Wis. Jan 6,

2020).

The Commissioner attempts to support the ALJ's conclusion by relying on certain

statements the ALJ made in his summary of the evidence. (ECF No. 20 at 10-15.) But it is

not enough that an ALJ made statements that *could* support his conclusion; the court can

consider only the reasons he actually gave. *See Mallett v. Saul*, No. 19-CV-512, 2020 U.S.

Dist. LEXIS 48433, at *13 (E.D. Wis. Mar. 20, 2020). To hold otherwise would invite ALJs

to issue decisions that consist of comprehensive summaries of the evidence but only bald conclusions. The Commissioner could then cobble together a plausible rationale for the conclusion from the factual summary, a rationale that would be entitled to deference on the premise that it was the ALJ's. Not only would such an approach offend the *Chenery* doctrine, *see SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)), it would be inconsistent with the ALJ's obligation to connect his conclusions to the evidence. *See Krevs v. Saul*, No. 18-CV-1742, 2020 U.S. Dist. LEXIS 1236, at *6-7 (E.D. Wis. Jan. 6, 2020)

Thus, the court can consider only the reasons the ALJ actually gave for his conclusion that Steadman's symptoms were not as severe as she reported. And he gave two: Steadman recovered well after her surgeries, and she "reported that she was unable to work and had not worked since the end of August of 2015 (Ex. 2E), but at the hearing, she testified that she had been performing work on multiple projects during the period at issue." (Tr. 21.)

The "projects" the ALJ referred to were home improvements, the first being essentially a home flipping project she undertook with her husband and father in 2017. (Tr. 40.) Her responsibilities were for design and ordering materials. (Tr. 41.) She said she also "did do a little bit of painting, what I could kind of tolerate." (Tr. 41.) She was able to work for about 20 minutes at a time, and, because the project house was close to her home, she was able to go home and lie down as needed. (Tr. 42.) But never, not even on her best day, was she able to work a full day. (Tr. 42.) The second project was the finishing

of the basement in their home. (Tr. 44-45.) Again, her role was primarily planning and design but a little bit of painting. (Tr. 44-45.)

Insofar as the ALJ might have been suggesting that Steadman's testimony regarding these projects was inconsistent with her report as to when she last worked, the document that the ALJ cited as to when Steadman last worked—Exhibit 2E—was from July 2016. (ECF No. 15 at 9; Tr. 204-217.) The first project was in 2017. Thus, it was accurate for her to say in 2016 that she had not done any work since 2015.

But the court understands the ALJ to have been saying something different: that Steadman's work on these projects was inconsistent with her claimed limitations. However, he did not adequately explain why he reached that conclusion or provide any explanation as to how her activities on these projects, which were limited and done on flexible terms, were inconsistent with her symptoms. All he said was that Steadman "has not provided sufficient evidence as to why these impairments, as of the amended alleged onset date, would limit her work abilities beyond the extent reflected in the residual functional capacity." (Tr. 21.) Although this conclusion follows the ALJ's mention of Steadman's work on the home-improvement projects, it does not explain how Steadman's activities were inconsistent with her alleged symptoms.

The ALJ also failed to explain how the fact that Steadman recovered well after her surgeries suggests somehow that her symptoms were not as severe as she reported. To say that someone recovered well after surgery indicates only that the person's symptoms

9

were not exacerbated by the surgery. It does not otherwise suggest anything regarding the severity of the person's symptoms.

In short, the ALJ failed to give sufficient specific reasons for his decision to discount Steadman's statements regarding the severity of her symptoms. The ALJ also generally failed to discuss the relevant factors in 20 C.F.R. § 404.1529(c)(3), as is required under SSR 16-3p. Therefore, remand is required.

### 4.2. Dr. Ahuja's Opinion

"[A] treating doctor's opinion generally is entitled to controlling weight if it is consistent with the record." *Hall v. Berryhill*, 906 F.3d 640, 643 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)). If an ALJ does not give a treating source's opinion controlling weight, the ALJ must provide good reasons for the weight he gives it. 20 C.F.R. § 404.1527(c)(2). He must consider the length, nature, and extent of the treating relationship, the extent to which the opinion is supported by other evidence, its consistency with the record as a whole, the physician's specialization, and other relevant factors. 20 C.F.R. § 404.1527(c).

Dr. Arvind Ahuja was Steadman's neurosurgeon, who provided four relevant opinions. Ahuja completed a Physical Residual Capacity Questionnaire on March 8, 2017 (Tr. 775-77), and again on November 1, 2018 (Tr. 890-92). The ALJ gave "these conclusions little weight," stating that "they are not supported by [the] medical record and are speculative in nature." But he did credit Ahuja's opinions regarding Steadman's abilities

regarding lifting and carrying and his opinion that she "rarely twist and climb ladders, occasionally stoop, crouch, and climb stairs, and frequently rotate/turn her head and flex/extend her head neck." (Tr. 21.)

Ahuja also wrote on July 7, 2016, that Steadman would be off work until her next appointment on September 15, 2016. (Tr. 436.) The ALJ also referred to a similar statement allegedly made by Ahuja on October 17, 2016, but in support he cited only the July 7, 2016 statement. (Tr. 21.) The ALJ gave these opinions little weight because they were intended to be temporary rather than indicative of Steadman's ongoing functional capacity. (Tr. 21.)

While the ALJ stated that the opinions "are not supported by [the] medical record and are speculative in nature," he did not explain the basis for these conclusions. The court is left wondering in what way they are inconsistent with the medical record. It is also unclear which opinion is speculative (and, moreover, how Ahuja's opinion is any more speculative than the sorts of opinions that routinely form the basis for a disability finding).

An ALJ must "persuasively explain" his reasons for discounting a treating source's opinion. *Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015). Having offered only a conclusion rather than an explanation, much less a persuasive one, remand is required. Additionally, the ALJ generally failed to discuss the factors required under 20 C.F.R. § 404.1527(c).

### 4.3. Residual Functional Capacity

If Steadman required the option to sit or stand at will and was limited to only occasional handling and fingering, as she alleged, then, based on the testimony of the vocational expert, she would be disabled. (Tr. 75-76.) Nonetheless, the ALJ did not include these specific limitations in his RFC finding, and it is unclear from the decision why he didn't.

Perhaps it was because he discounted Steadman's reports as to the severity of her symptoms. Aside from not saying this, as noted above, the ALJ's assessment of the severity of Steadman's symptoms was insufficient. Thus, following the ALJ's reassessment of Steadman's symptoms, it may be necessary to reassess Steadman's RFC and, specifically, any limitations on using her arms and hands and whether she requires the option to sit or stand at will.

Similarly, a reassessment of Ahuja's opinion may require a reassessment of Steadman's RFC in that Ahuja opined that Steadman would require the ability to shift at will from sitting or standing.

In any event, on remand, it will be necessary for the ALJ to adequately explain the basis for his RFC finding.

## 5. Conclusion

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and

pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings

consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of March, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge